**STATE of Iowa, Appellee,**

v.

**Darrell SLAYTON, Appellant.**

**No. 86–726.**

Supreme Court of Iowa.

Dec. 23, 1987.

Emil Trott, Jr. of Barrett & Trott, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., and Willard W. Oleson, Co. Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, LAVORATO, and NEUMAN, JJ.

SCHULTZ, Justice.

Darrell Slayton was convicted by a jury of the crime of going armed with intent to use a dangerous weapon against the person of another in violation of Iowa Code section 708.8 (1985). This charge arose out of events that occurred in the early hours of July 14, 1985, at the home of defendant's parents, Dale and Fannie Slayton. Defendant had been drinking beer earlier in the evening and had taken some pain pills for a broken hand. Later, defendant was sitting in the garage at his parents' farm thinking about a wage dispute with his father. At about 3:00 a.m. defendant grabbed a shotgun and a single shotgun shell from the garage and entered his parents' bedroom while they were sleeping. After words and a physical struggle between the defendant and his father, defendant was struck over the head with a small club. As a result of the altercation the sheriff's office was called and these charges were filed.

On the first day of trial defendant's attorney filed a motion to dismiss on grounds that the firearm involved was not a dangerous weapon because it was inoperable, a motion in limine to suppress photographic evidence, and a motion for continuance. These motions were overruled and the case proceeded to trial. At the close of the State's case defendant again moved to dismiss, this time on grounds that there was insufficient evidence that he had the intent to use the shotgun because he knew it was inoperable. The motion was denied. The State was allowed to reopen its case to introduce evidence that the weapon had been successfully test-fired. Defendant then presented his case and rested. During rebuttal, the State successfully requested permission to test-fire the shotgun in the presence of the jury. The court denied defendant's suggestion that the Department of Criminal Investigation be allowed to run tests on the gun to determine its operability. Following a verdict of guilty, defendant's post-trial motions were denied and appeal was taken.

The issues presented on appeal are (1) whether there was sufficient evidence to support a jury verdict that defendant intended to use the shotgun as required by section 708.8; (2) whether the trial court erred in refusing to grant defendant a continuance prior to the second test-firing of the gun in the view of the jury; (3) whether

the trial court erred in admitting a photograph of defendant taken at the county jail after defendant's arrest; and (4) whether defendant received effective assistance of counsel at trial.

I. *Intent to use.* Defendant contends that there was insufficient proof presented at trial to support a jury verdict that he intended to use the shotgun. We must first interpret the statute to determine what must be proved and then determine whether the evidence was sufficient to sustain the conviction.

Section 708.8 states that "[a] person who goes armed with any dangerous weapon with the intent to use without justification such weapon against the person of another commits a class 'D' felony." Defendant concedes that the gun in question was a dangerous weapon, even though it may have been inoperable. *See* Iowa Code § 702.7(a). Defendant contends that he had no "intent to use" the firearm because he had no intent to shoot it. He argues that because the gun was defective, and he knew it was defective, he could not have intended to use it. The State argues that an "intent to use" a firearm is broader than the intent to shoot it and that even under defendant's construction of the statute there was sufficient evidence of an intent to shoot. Thus, we initially must decide whether "intent to use" means intent to shoot or whether it includes using a gun to threaten or intimidate as well.

We agree with the defendant that, as applied to a firearm, the "intent to use" element of section 708.8 is ambiguous and could either mean intent to use by firing at another person or intent to use by frightening or harassing a person with no intent to discharge the gun. It is well established that penal statutes are to be construed strictly, with doubts being resolved in favor of the accused. *State v. Lawr*, 263 N.W.2d 747, 750 (Iowa 1978). We agree with defendant's contention that the "intent to use" element requires proof of an intent to shoot another person when a firearm is involved.

Section 708.8 was part of a massive criminal code revision which became effective January 1, 1978. 1976 Iowa Acts ch. 1245, § 808. In construing this section we find it appropriate to look at the general statutory scheme of which it was a part. *State v. Conner*, 292 N.W.2d 682, 684 (Iowa 1980). We believe this scheme is designed to grade the offenses and impose punishment commensurate with the degree of culpability required for the various crimes.

Going armed with intent under Iowa Code section 708.8 is a class "D" felony. Therefore, we could reasonably expect that the legislature intended to require a greater quantity or degree of misconduct for a conviction under this crime than would be involved in related crimes classified as misdemeanors. Intentionally pointing a firearm toward another or displaying any dangerous weapon in a threatening manner toward another is an assault. Iowa Code § 708.1(3). Absent additional proof, this assault is punishable as a simple misdemeanor. Iowa Code § 708.2(3). This same act of assault, committed without an intent to inflict a serious injury but which causes a bodily injury or disturbing mental illness, is a serious misdemeanor. Iowa Code § 708.2(2). Again the same act of assault, punishable as a simple misdemeanor, committed with intent to inflict a serious injury on another rises to an aggravated misdemeanor. Iowa Code § 708.2(1).

If we adopt the State's position that the "intent to use" element of 708.8 is satisfied by proof that defendant intended to use the gun to intimidate or harass his parents by pointing it toward or displaying it to them we would arrive at an unreasonable result. A person who goes armed with intent to point a firearm at another or with intent to display a dangerous weapon in a threatening manner toward another would be guilty of a felony punishable by up to five years in prison, but a person who actually points a firearm at another or actually displays a dangerous weapon in a threatening manner toward another would be guilty of only a simple misdemeanor punishable by up to thirty days in jail. We believe this would be repugnant to the overall purpose of the criminal code to punish more serious offenses more severely.

We must now decide whether there is sufficient evidence in the record to sustain defendant's conviction under our interpretation of section 708.8. In doing so, we review the evidence in the light most favorable to the State. *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981). We hold that the evidence was sufficient to support a finding that defendant had the requisite intent to use the gun he carried into his parents' bedroom.

An affidavit made by defendant's mother shortly after the incident was introduced into evidence at trial. In that affidavit she states that the defendant came into their bedroom, turned on the light and pointed a shotgun at them. She further states that she tried pushing the shotgun out of her face and then ran outside. Defendant then came after her and put a shell in the gun. In response to defendant's actions, Mrs. Slayton states that her husband thought defendant was going to shoot her and so he struck defendant in the head with a club. The defendant testified that he took the gun to his parents' bedroom for self-defense or to deter his father from acting. Defendant also admits he took a shotgun shell with him. A reasonable jury could infer from this evidence that defendant intended to use the shotgun against his parents by shooting them. Although at trial the parents contradicted some of the matters contained in the mother's affidavit, the jury could choose to disbelieve their contradictory evidence. We conclude there is sufficient evidence to convince a rational fact finder beyond a reasonable doubt of defendant's guilt. *See State v. McFadden*, 320 N.W.2d 608, 614 (Iowa 1982). We find no error in the trial court's ruling on the motion for judgment of acquittal.

II. *Continuance.* Near the end of trial, in response to the prosecution's request to test fire the weapon in the presence of the jury, defendant asked that the shotgun involved be sent to the D.C.I. to have its operability determined. The court, noting that defendant had already had ample time to complete discovery, refused the request. The trial court treated this request as a motion for continuance and we shall also.

A ruling on a motion for a continuance is a matter committed to the sound discretion of the court and will be reversed only when an abuse of discretion is shown. *State v. Marti*, 290 N.W.2d 570, 588 (Iowa 1980). Defendant claims that the trial court abused its discretion because surprise evidence was admitted. The claimed surprise was evidence from the test-firing that the shotgun was operational. A defense theory advanced by defendant was that he could not have intended to use the shotgun because he believed it was inoperable. Evidence of a successful test-firing on the first morning of trial was intended to rebut this defense theory. The request to allow the jury to witness a second test-firing by the sheriff prompted defendant's request for testing by the D.C.I.

The trial court did not abuse its discretion in refusing to grant a continuance at the time the request was made. Defendant, by his own testimony, raised the operability issue. He testified that he was acquainted with the condition of the gun and although he felt that it was inoperable, he admitted that it would fire one or two times out of five. Under this record the trial court could have reasonably believed defendant was not surprised by admission of evidence that the gun was operable. It is also notable that defendant did not claim surprise at the time he moved to have the gun tested. Under all of these circumstances we find no abuse of discretion.

III. *Admission of photograph.* At trial, the court admitted into evidence a photograph which was taken in the county jail on the night of the incident in question. The photograph indicates that defendant is at the jail and has a caption at the bottom which reads, "Going Armed w/Intent." The picture shows blood on defendant's person and shirt from the injuries inflicted by his father.

Defendant challenges the admissibility of the photograph on grounds that it is not relevant. *See* Iowa R.Evid. 401, 402. Defendant further claims that the probative value of the photograph, if it is relevant, is outweighed by the danger of unfair prejudice to the defendant. *See* Iowa R.Evid. 403. The State argues that any error un-

der Rule 403 was not preserved because it was not raised at trial and that relevancy is the only issue.

We believe that defendant preserved error concerning the probative value of the photograph. An objection to evidence on the grounds that it is irrelevant and immaterial is "sufficient to raise the issue of the probative value of this evidence in relation to the purpose for which it was offered." *State v. Fuhrmann,* 257 N.W.2d 619, 625 (Iowa 1977).

Relevancy involves two considerations. The evidence must tend to prove the existence of some fact by making that fact more or less probable than without the evidence. In addition, the fact on which the evidence is offered must be of consequence or material to the dispute. *See State v. Butler,* 415 N.W.2d 634 (Iowa 1987). Defendant urges that there is no issue for which the picture could be offered because identity is not an issue in this case. In response, the State argues that the photo is relevant to prove the extent of the injuries defendant suffered and defendant's condition the night of the incident. It further urges that the photo is admissible because it illuminates for the jury the verbal testimony concerning the scuffle between the defendant and his father.

Photographs which illuminate verbal testimony are relevant. *See State v. Brown,* 397 N.W.2d 689, 700 (Iowa 1986); *Fuhrmann,* 257 N.W.2d at 624–25. While the defendant's injuries may not be relevant to the crime for which he is charged, the photo is relevant to show the father's reaction to the son's loading the gun, which bears on defendant's claim that he and his father knew the gun was inoperable. Admissibility of the photo is within the trial court's discretion. *See State v. Munz,* 355 N.W.2d 576, 580 (Iowa 1984). We do not believe the trial court abused its discretion.

Additionally, we do not believe the probative value of the photographs was outweighed by the danger of unfair prejudice to the defendant. The jury knew the defendant had been arrested and knew what defendant was charged with. There was no prejudice. *See State v. Coburn,* 315 N.W.2d 742, 749 (Iowa 1982).

IV. *Ineffective counsel.* Defendant raises several claims of ineffective assistance of counsel which we shall address separately. To establish ineffective assistance of counsel, a defendant must prove by a preponderance of the evidence that counsel failed to perform an essential duty, and that prejudice resulted therefrom. *State v. Hildebrant,* 405 N.W.2d 839, 841 (Iowa 1987).

One claim of ineffectiveness concerns counsel's failure to file a motion to dismiss until the morning of trial. The motion was overruled in part because it was not timely. This claim fails because defendant has not established prejudice. As we have already indicated in this opinion, there was sufficient evidence presented by the State to generate a jury question on defendant's guilt. It would have been error to grant the motion.

Defendant makes several other claims of ineffective assistance of counsel. These include the failure to make certain objections, the failure to request certain jury instructions, the failure to give notice of a diminished capacity defense and a general charge that counsel was insufficiently prepared for trial. These are matters more suited to post-conviction relief. At such a hearing trial counsel will have opportunity to explain its conduct and performance and the court will have a complete record. *See State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978). At this time we see no obvious incompetency that would justify a departure from the normal manner of challenging such actions.

We conclude that defendant has not shown ineffective assistance of counsel. This holding, however, is without prejudice to his right to seek post conviction relief for these claims.

In summary, we affirm defendant's conviction on all the issues raised.

AFFIRMED.