# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3789

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Julio Gomez-Hernandez, | * |
| | * |
| Defendant - Appellant. | * |

_____

No. 01-3819

_____

Appeals from the United States
District Court for the
Southern District of Iowa.

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Luis Alcaras-Navarro, | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted: June 12, 2002

Filed: August 28, 2002

_____

Before WOLLMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

An alien who illegally reenters this country after a prior deportation violates 8 U.S.C. § 1326(a) and is subject to imprisonment for not more than two years. However, if the alien illegally reenters after a deportation that followed an aggravated felony conviction, he may be imprisoned for up to twenty years. § 1326(b)(2). See generally United States v. Estrada-Quijas, 183 F.3d 758, 760-61 (8th Cir. 1999). The Guidelines offense levels for illegal reentry offenses are found in U.S.S.G. § 2L1.2. Prior to November 2001, to reflect the more serious nature of a § 1326(b)(2) offense, § 2L1.2(b)(1) provided for a sixteen-level enhancement if the prior deportation followed *any* aggravated felony conviction, while application note 5 authorized a downward departure "based on the seriousness of the aggravated felony."  In November 2001, the Sentencing Commission amended this guideline to provide for a sliding scale of enhancements from eight to sixteen levels based on the seriousness of the aggravated felony as defined in the amended guideline. See §§ 2L1.2(b)(1)(A)-(C); U.S.S.G. App. C, amend. 632.  These appeals require us to apply the definition of aggravated felonies warranting a sixteen-level enhancement.

Luis Alcaras-Navarro pleaded guilty to illegal reentry in violation of 8 U.S.C. § 1326(a).  His prior deportation followed a January 1998 conviction for unlawful sexual intercourse with a minor in violation of California Penal Code § 261.5(d). Julio Gomez-Hernandez pleaded guilty to illegal reentry in violation of § 1326(a). His prior deportation followed a September 1999 conviction for "going armed with intent" in violation of section 708.8 of the Iowa Code.  Alcaras and Gomez concede their prior crimes were aggravated felonies for purposes of § 1326(b)(2), warranting imposition of an eight-level enhancement under § 2L1.2(b)(1)(C). However, the

district court[1] determined that each was a felony crime of violence and imposed the sixteen-level enhancement in § 2L1.2(b)(1)(A). Alcaras and Gomez appeal the resulting sentences, challenging that determination.

The issue is whether the defendants' prior convictions require a sixteen-level enhancement under § 2L1.2(b)(1)(A). That guideline provides:

> If the defendant previously was deported, or unlawfully remained in the United States, after -- (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense committed for profit, increase by **16** levels.

In these cases, the defendants' prior convictions do not fall within this guideline unless they were felonies *and* crimes of violence. Crime of violence is defined in application note 1(B)(ii) to § 2L1.2, which provides:

> "Crime of violence" --
>
> (I) means an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and
>
> (II) includes murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses (including sexual abuse of a minor),

---

[1]Alcaras was sentenced by the HONORABLE HAROLD D. VIETOR, United States District Judge for the Southern District of Iowa. Gomez was sentenced by the HONORABLE RONALD E. LONGSTAFF, Chief Judge of the United States District Court for the Southern District of Iowa.

robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.[2]

Alcaras argues that his prior conviction was not a felony under California law. Both Alcaras and Gomez argue their convictions were not "crimes of violence." We review the district court's interpretation of the sentencing guidelines *de novo* and its factual findings for clear error. United States v. Rohwedder, 243 F.3d 423, 425 (8th Cir. 2001). We affirm both sentences.

## I. Alcaras Was Convicted of a Felony.

The sixteen-level enhancement requires a prior conviction for a <u>felony</u> crime of violence. A felony for this purpose is a "federal, state, or local offense punishable by imprisonment for a term exceeding one year." U.S.S.G. § 2L1.2(b)(1), comment. (n.1(B)(iv)). Alcaras was convicted of unlawful sexual intercourse with a minor under the age of sixteen by a person twenty-one years of age or older. Under

---

[2]The sliding scale in the new guideline is reflected in application note 1(B)(ii). The 8-level enhancement in § 2L1.2(b)(1)(C) is imposed for any crime of violence as defined in 18 U.S.C. § 16:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

See U.S.S.G. § 2L1.2, comment. (n.2), incorporating the definition of aggravated felony in 8 U.S.C. § 1101(a)(43)(F). Subpart (II) of application note 1(B)(ii) limits the sixteen-level enhancement to enumerated serious felonies, whereas 18 U.S.C. § 16(b) broadly includes all felonies involving a substantial risk of physical force.

California law, that offense is either a misdemeanor punishable by a prison term of not more than one year in a county jail, or a felony punishable by a prison term of two to four years in the state prison. Cal. Penal Code § 261.5(d). Following Alcaras's conviction, the California court suspended imposition of his sentence, granted him five years probation, and sentenced him to serve 365 days in county jail with 180 days suspended. Alcaras argues this was not a felony sentence. We disagree.

"Under California law, where the offense is alternatively a felony or misdemeanor, it is regarded as a felony for every purpose until judgment." United States v. Robinson, 967 F.2d 287, 293 (9th Cir. 1992). Such an offense becomes a misdemeanor if judgment is entered "imposing a punishment other than imprisonment in the state prison," or if the court "grants probation to a defendant without imposition of sentence and . . . declares the offense to be a misdemeanor. Cal. Penal Code § 17(b)(1) and (3). Alcaras does not satisfy these criteria. As we explained in United States v. Haggerty, 85 F.3d 403, 406 (8th Cir. 1996):

> [Alcaras] does not meet either of the foregoing criteria. He does not meet the requirement of subsection (1) [of Penal Code § 17(b)] because an order granting probation is not a judgment. [He] does not meet the requirement of subsection (3) because the California court has never declared his conviction to be a misdemeanor.

See also People v. Banks, 348 P.2d 102, 113 (Cal. 1959); People v. Smith, 16 Cal. Rptr. 12, 13 (Dist. Ct. App. 1961); Robinson, 967 F.2d at 293. In arguing to the contrary, Alcaras relies on United States v. Brown, 33 F.3d 1014, 1017-18 (8th Cir. 1994). But unlike this case, in Brown the California court had declared defendant's offense to be a misdemeanor for purposes of § 17(b)(3) of the California Penal Code. Thus, the district court properly concluded that Alcaras's conviction for unlawful sexual intercourse with a minor was a felony under California law.

## II. Alcaras Committed a "Crime of Violence."

Alcaras next argues that a violation of California Penal Code § 261.5(d) is not a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A) because it does not include as an element of the offense "the use, attempted use, or threatened use of physical force against the person of another," as subpart (I) of application note 1(B)(ii) requires. Alcaras concedes that his California conviction constituted "sexual abuse of a minor," a category of offenses listed as crimes of violence in subpart (II) of application note 1(B)(ii). However, he argues that the Sentencing Commission's use of the conjunctive "and" between subparts (I) and (II) means that a prior conviction must fall within *both* subparts to qualify as a "crime of violence." Like the district court, we disagree.

Although the word "and" is usually a conjunctive, "to ascertain the clear intention of the legislature . . . courts are often compelled to construe 'or' as meaning 'and,' and again 'and' as meaning 'or.'" United States v. Fisk, 70 U.S. (3 Wall.) 445, 447 (1865). For example, in Bruce v. First Federal Sav. & Loan Ass'n , 837 F.2d 712, 717 (5th Cir. 1988), the court construed the word "and" as a disjunctive because "[t]o read it in the conjunctive would nullify legislative intent." Accord Murphy Oil Corp. v. Hickel, 439 F.2d 417, 423-24 n.10 (8th Cir. 1971).

Here, the word "includes" that introduces subpart (II) of application note 1(B)(ii) strongly suggests an intent that the enumerated crimes always be classified as "crimes of violence." To be sure, that intent would have been more clearly expressed had subpart (II) preceded subpart (I), so the application note would read, "crime of violence includes murder [etc.] and also includes any other offense . . . that has as an element the use, attempted use, or threatened use of physical force . . . ." But our search is for the Sentencing Commission's intent, not for perfect drafting. Alcaras argues that a conjunctive meaning must have been intended because the prior definition of "crime of violence" had two subparts connected by "or." See U.S.S.G.

§ 4B1.2(a), incorporated by reference in U.S.S.G. § 2L1.2, comment. n.1 (2000). But neither subpart of § 4B1.2(a) uses the "includes" construct, so the present and former definitions are not directly comparable in this regard.

Moreover, construing "and" as a disjunctive in the new application note is consistent with the principle that courts avoid a statutory construction that would render another part of the same statute superfluous. See Ratzlaf v. United States, 510 U.S. 135, 140-41 (1994). The crimes enumerated in subpart (II) include "burglary of a dwelling." The crime of burglary is defined differently by the laws of the various States, but burglary, or at least "generic" burglary, has never had as an element "the use, attempted use, or threatened use of physical force against the person of another." See Taylor v. United States, 495 U.S. 575, 580, 598-99 (1990). Therefore, if Alcaras's construction of the "and" in application note 1(B)(ii) is correct, "burglary of a dwelling" would not be a crime of violence, despite its inclusion in subpart (II), because it does not contain the physical force element required in subpart (I). Thus, his interpretation would render part of the application note surplusage.

For these reasons, we conclude that a prior felony conviction for any of the crimes enumerated in subpart (II) of application note 1(B)(ii) is a crime of violence for purposes of § 2L1.2(b)(1)(A)(ii). Therefore, we need not consider whether the California crime of which Alcaras was convicted, unlawful sexual intercourse with a minor, inherently involves the element of physical force required by subpart (I) because there is physical contact with a victim who is incapable of lawful consent. Cf. United States v. Rodriguez, 979 F.2d 138, 140-41 (8th Cir. 1992) (statutory rape was a crime of violence under prior U.S.S.G. § 2L1.2(b)(2)). As Alcaras was convicted of a felony crime of violence prior to his previous deportation order, his sentence must be affirmed.

## III. Gomez Committed a "Crime of Violence."

Gomez was convicted of violating § 708.8 of the Iowa Code, which provides that "[a] person who goes armed with any dangerous weapon with the intent to use without justification such weapon against the person of another commits a class 'D' felony." This offense is not one of those specifically enumerated in subpart (II) of application note 1(B)(ii). Gomez argues it is not a crime of violence under subpart (I) because its elements do not include "the use, attempted use, or threatened use of physical force against the person of another." Therefore, Gomez concludes, the district court erred in imposing a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii). We conclude this Iowa crime does fall within subpart (I).

In deciding whether a predicate offense has as an element the use, attempted use, or threatened use of physical force against a person, we normally look to the statutory definition of the predicate offense, rather than the defendant's underlying conduct. However, if the statutory definition encompasses conduct which may or may not be included in the applicable guideline, we may look to the underlying charging papers to determine the elements of the crime to which the defendant pleaded guilty. See United States v. Smith, 171 F.3d 617, 619-21 (8th Cir. 1999) (concluding defendant's Iowa misdemeanor assault conviction included the requisite element of physical force); United States v. Wright, 957 F.2d 520, 522 (8th Cir.), cert. denied, 506 U.S. 856 (1992).

In construing the "intent to use" element of going armed with intent, the Supreme Court of Iowa noted that § 708.8 "was part of a massive criminal code revision" designed "to grade the offenses and impose punishment commensurate with the degree of culpability required." State v. Slayton, 417 N.W.2d 432, 434 (Iowa 1987). Intentionally pointing a firearm or displaying a dangerous weapon in a threatening manner toward another person is an assault, punishable as a simple misdemeanor. Iowa Code §§ 708.1(3), 708.2(4). If the assault is committed without

intent to cause serious injury but does inflict bodily injury or mental illness, it is a serious misdemeanor, § 708.2(2). If the assault is committed with intent to inflict a serious injury on another person, it is an aggravated misdemeanor, § 708.2(1). Going armed with intent is a class "D" felony, punishable by up to five years in prison, §§ 708.8, 902.9. To satisfy the legislative intent underlying this array of assault offenses, the felony of going armed with intent "require[s] a greater quantity or degree of misconduct for a conviction . . . than would be involved in related crimes classified as misdemeanors." Slayton, 417 N.W.2d at 434.

Gomez argues that going armed with intent is not a crime of violence under the amended guideline because "[i]t is possible to commit this offense without using, attempting to use, or threatening to use force against the person of another." We need not consider this question because it is clear that § 708.8 includes at least some offenses that involve an actual, attempted, or threatened use of force. Under Slayton, a conviction for going armed with intent requires proof that the defendant carried a dangerous weapon with the specific intent to use it to inflict serious injury. That means the defendant not only intended to use the weapon on another person, but also took a significant step toward accomplishing that intent by "going armed." See State v. Ray, 516 N.W.2d 863, 865 (Iowa 1994). That act will in many (if not all) cases constitute an attempted use of physical force against the victim. See 2 WAYNE R. LAFAVE ET AL., SUBSTANTIVE CRIMINAL LAW § 6.2 (1986)(defendant guilty of attempt if the government proves specific intent to accomplish a criminal objective and an act in furtherance of that intent which goes beyond mere preparation). Thus, we may look at the circumstances underlying Gomez's crime.

If the underlying facts are relevant, it is clear Gomez committed a crime of violence. According to a paragraph of the presentence investigation report to which Gomez did not object, an employee escorted him from a Des Moines bar because he misbehaved and refused to pay for a drink, and Gomez then returned with a hammer and swung at the employee five or six times, hitting him in the head and causing

injury. He was charged with going armed with intent and willful injury. He pleaded guilty to the former offense, and the Iowa trial court sentenced him to the statutory maximum of five years in prison. In July 2000 he was paroled and deported. Given these underlying facts, the district court correctly determined that Gomez's conviction for going armed with intent was a felony crime of violence and assessed the sixteen-level increase under U.S.S.G. § 2L1.2(b)(1)(A)(ii).

The judgments of the district court are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.